# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA
### WEST PALM BEACH DIVISION

CASE NO. *14 CV 80931 COHN/SELTZER*



|  |  |
|---|---|
| CONSUMER FINANCIAL PROTECTION BUREAU and THE STATE OF FLORIDA, Office of the Attorney General, Department of Legal Affairs, | \| |
| Plaintiffs, | \| |
| v. | \| |
| MICHAEL HARPER, an individual; BENN WILLCOX, an individual; MARC HOFFMAN, an individual; THE HOFFMAN LAW GROUP, P.A. f/k/a THE RESIDENTIAL LITIGATION GROUP, P.A., a Florida corporation; NATIONWIDE MANAGEMENT SOLUTIONS, LLC, a Florida limited liability company; LEGAL INTAKE SOLUTIONS, LLC, a Florida limited liability company; FILE INTAKE SOLUTIONS, LLC, a Florida limited liability company; and BM MARKETING GROUP, LLC, a Florida limited liability company, | \| |
| Defendants. | \| |

## COMPLAINT FOR PERMANENT INJUNCTION
## AND OTHER RELIEF

### (FILED UNDER TEMPORARY SEAL)[1]

Plaintiffs, the Consumer Financial Protection Bureau and the State of Florida, allege:

---

[1] Motion to Seal filed concurrently.

## SUMMARY OF COMPLAINT

1.      In the midst of America's foreclosure crisis, an illicit industry of mortgage modification scams began making money by charging distressed homeowners upfront fees on the promise that they could obtain mortgage modifications for those homeowners, often doing little to nothing to actually assist the homeowners. To combat this practice, many states, including Florida, enacted laws to prohibit these schemes, and federal regulators further enhanced these laws by making it illegal in every state for mortgage assistance relief providers to charge homeowners a fee for mortgage modification services before actually obtaining mortgage modifications for those homeowners. 12 C.F.R. Part 1015 (2012).

2.      Since at least early 2012, an enterprise operating in the name of the Hoffman Law Group (the "HLG Enterprise") has generated millions of dollars in illegal upfront fees by convincing consumers to pay for the opportunity to be included as a plaintiff in so-called "mass-joinder" lawsuits against their mortgage lenders. This enterprise induces consumers to enroll by falsely promising that the lawsuits will induce banks to give the consumers mortgage modifications or foreclosure relief.

3.      Run by veterans of mortgage modification schemes, the HLG Enterprise uses these promises to convince consumers to pay fees before the HLG Enterprise obtains, or even tries to obtain, mortgage modifications for the consumers it signs up.

4.      The HLG Enterprise charges consumers varying amounts, typically a $6,000 initial payment, followed by a $495 monthly fee.

5.      In reality, defendants do little or nothing to actually assist consumers. Rather, in numerous instances, they have directed consumers to avoid interactions with their lenders or servicers and, in some instances, instructed consumers to stop making

2

their mortgage payments. When consumers discover that the HLG Enterprise has never even contacted their lenders on their behalf, many find themselves in default and some have lost their properties through foreclosure.

6.     The Consumer Financial Protection Bureau, an agency created by Congress in 2010 and charged with protecting consumers from financial industry misconduct, and the Attorney General of the State of Florida, bring this action to halt the HLG Enterprise's scam, to hold the individuals who run the Enterprise accountable, and to provide redress for the injuries to consumers that the Enterprise has caused.

7.     More specifically, the plaintiffs bring this action under (1) Sections 1054 and 1055 of the Consumer Financial Protection Act of 2010, 12 U.S.C. §§ 5564, and 5565; and (2) Section 626 of the Omnibus Appropriations Act, 2009 (as amended by Section 1097 of the CFPA), 12 U.S.C. § 5538, and its implementing regulation, the Mortgage Assistance Relief Services Rule, 12 C.F.R. Part 1015 (2012) ("Regulation O"). Florida asserts further claims under the Florida Unfair and Deceptive Trade Practices Act ("FDUTPA"), Chapter 501, Part II, Florida Statutes and other state laws.

8.     Regulation O requires providers of mortgage assistance relief services to make certain disclosures, such as that the business is not affiliated with the government and that the consumer may reject any proposed modification. It also prohibits these providers from making certain representations, such as that a consumer is not obligated to continue making his mortgage payments. And Regulation O generally prohibits mortgage assistance relief service providers from collecting an advance fee for such services. *See* 12 C.F.R. Part 1015.

9.     The plaintiffs support consumers' right to challenge alleged fraud by mortgage lenders or servicers. But regardless of the underlying merits of the consumers'

3

claims in the mass-joinder lawsuits that the HLG Enterprise files, it should not be allowed to violate the law in the process of recruiting consumers to join those lawsuits.

10.     The HLG Enterprise has misled thousands of homeowners nationwide and as a result, has pocketed well over $5 million. In this action, the plaintiffs seek an order permanently enjoining Defendants from engaging in their illicit business practices, granting restitution for affected consumers, imposing civil penalties, and granting all other relief available under the CFPA, Regulation O, and FDUTPA. This will make Defendants' victims whole again and will prevent the HLG enterprise from causing the same harm to other homeowners.

## JURISDICTION AND VENUE

11.     This Court has subject matter jurisdiction over this action because it is "brought under Federal consumer financial law," 12 U.S.C. § 5565(a)(1), presents a federal question, 28 U.S.C. § 1331, and is brought by an agency of the United States, 28 U.S.C. § 1345.

12.     In addition, pursuant to 28 U.S.C. § 1367, this Court has supplemental jurisdiction over the separate state law claims asserted by Florida in this action because those claims are so related to the claims asserted by the Bureau and Florida under Regulation O that they form part of the same case or controversy. Those claims also arise out of the same transactions or occurrences as the claims brought by the Bureau under 12 U.S.C. §§ 5564, 5565, and by Florida under 12 U.S.C. § 5538(b) and 12 C.F.R. § 1015.10 (2012).

13.     Venue is proper in this district under 28 U.S.C. § 1391(b) and 12 U.S.C. § 5564(f) because a substantial part of the events or omissions and course of conduct

giving rise to the claims set forth in this Complaint occurred in this district (specifically Palm Beach County).

**PARTIES**

14.     The Bureau is an independent agency of the United States charged with regulating the offering and provision of consumer financial products or services under federal consumer financial laws, including Regulation O. 12 U.S.C. §§ 5481(12)(Q), (14), 5491(a), 5538.

15.     The Bureau is authorized to initiate federal district court proceedings, by its own attorneys, to enjoin violations of Regulation O, and to secure such relief as may be appropriate in each case. 12 U.S.C. §§ 5564(a)-(b), 5565. This includes the rescission or reformation of contracts, the refund of moneys paid, restitution, disgorgement or compensation for unjust enrichment, and civil money penalties. *Id.* § 5565(a)(2).

16.     The State of Florida's Office of the Attorney General is an enforcing authority of FDUTPA, and Section 812.14, Florida Statutes. The State of Florida has conducted an investigation of the matters alleged herein, and the head of the enforcing authority, Attorney General Pamela Jo Bondi, has determined that this enforcement action serves the public interest.

17.     The State of Florida is authorized to bring this action and to seek injunctive and other statutory relief to enforce Regulation O under 12 U.S.C. § 5538(b) and 12 C.F.R. § 1015.10 (2012).

18.     As an enforcing authority under FDUTPA, the Office of the Attorney General is authorized to pursue this action to enjoin FDUTPA violations and to obtain legal, equitable, or other appropriate relief, including restitution, the refund of monies

paid, disgorgement of ill-gotten monies, civil penalties, and other relief as may be appropriate pursuant to Sections 501.207, 501.2075, and 501.2077, Florida Statutes.

19.     Defendant Michael Harper is an individual who, directly and through the HLG Enterprise, offers, provides, or arranges for others to provide mortgage assistance relief services, as defined in Regulation O, 12 C.F.R. § 1015.2.

20.     Harper, a non-attorney resident of North Palm Beach, Florida, within this District, is the HLG Enterprise's most senior manager. He materially participates in the conduct of the enterprise's affairs.

21.     At all times material to this complaint, Harper transacts or has transacted business in the Southern District of Florida.

22.     Defendant Benn Willcox is an individual who, directly and through the HLG Enterprise, offers, provides, or arranges for others to provide mortgage assistance relief services, as defined in Regulation O, 12 C.F.R. § 1015.2.

23.     Willcox, a non-attorney resident of Jupiter, Florida, within this District, manages and controls the HLG Enterprise's bank accounts. He has managerial responsibility for the enterprise and materially participates in the conduct of its affairs.

24.     At all times material to this complaint, Willcox transacts or has transacted business in the Southern District of Florida.

25.     Defendant Marc Hoffman is an individual who, directly and through the HLG Enterprise, offers, provides, or arranges for others to provide mortgage assistance relief services, as defined in Regulation O, 12 C.F.R. § 1015.2.

26.     Hoffman, a resident of Boca Raton, Florida, within this District, is an attorney licensed to practice in Florida and the District of Columbia and is the President

of the Hoffman Law Group. He is the enterprise's front man, has managerial responsibility for HLG, and materially participates in the conduct of its affairs.

27.     At all times material to this complaint, Hoffman transacts or has transacted business in the Southern District of Florida.

28.     Defendant The Hoffman Law Group, P.A. ("HLG"), is a Florida corporation formed by Hoffman as "The Residential Litigation Group, P.A." on or about April 16, 2012 and renamed "The Hoffman Law Group, P.A." on or about November 26, 2012. Its current address is 860 US Highway 1, Suite 206, North Palm Beach, Florida, but it has also purported to do business at 2200 Pennsylvania Ave NW, 4th Floor, Washington, DC. The centerpiece of the enterprise, HLG is part of a common enterprise that offers, provides, or arranges for others to provide mortgage assistance relief services, as defined in Regulation O, 12 C.F.R. § 1015.2.

29.     At all times material to this complaint, HLG transacts or has transacted business in the Southern District of Florida.

30.     Defendant Nationwide Management Solutions, LLC is a Florida limited liability company formed by Harper and Willcox on April 26, 2012. Its current address is 860 US Highway 1, Suite 209, North Palm Beach, Florida. Operating the human resources side of the enterprise, it is part of a common enterprise that offers, provides, or arranges for others to provide mortgage assistance relief services, as defined in Regulation O, 12 C.F.R. § 1015.2.

31.     At all times material to this complaint, it transacts or has transacted business in the Southern District of Florida.

32.     Defendant Legal Intake Solutions, LLC is a Florida limited liability company formed by Harper and Willcox on November 3, 2011. Its current address is

860 US Highway 1, Suite 205, North Palm Beach, Florida. As one of the companies that solicits consumers for the enterprise, it is part of a common enterprise that offers, provides, or arranges for others to provide mortgage assistance relief services, as defined in Regulation O, 12 C.F.R. § 1015.2.

33.    At all times material to this complaint, Defendant Legal Intake Solutions transacts or has transacted business in the Southern District of Florida.

34.    Defendant File Intake Solutions, LLC is a Florida limited liability company formed by Harper and Willcox on July 16, 2013. Its current address is 860 US Highway 1, Suite 205, North Palm Beach, Florida. It also solicits consumers for the enterprise, and is part of a common enterprise that offers, provides, or arranges for others to provide mortgage assistance relief services, as defined in Regulation O, 12 C.F.R. § 1015.2.

35.    At all times material to this complaint, Defendant File Intake Solutions transacts or has transacted business in the Southern District of Florida.

36.    Defendant BM Marketing Group is a Florida limited liability company formed by Harper on October 18, 2012. Its current address is 860 US Highway 1, Suite 205, North Palm Beach, Florida. BM Marketing Group funnels the enterprise's profits to non-attorneys Harper and Willcox. In so doing, it is part of a common enterprise that offers, provides, or arranges for others to provide mortgage assistance relief services, as defined in Regulation O, 12 C.F.R. § 1015.2.

37.    At all times material to this complaint, it transacts or has transacted business in the Southern District of Florida.

38.    Together, Defendants have engaged in an ongoing, illicit mortgage relief scheme that preys on homeowners nationwide. As pleaded more specifically below,

8

Harper, Willcox, and Hoffman operate the corporate Defendants as a common enterprise in order to carry out this scheme. At all times material to this Complaint, Harper, Willcox, and Hoffman have materially participated in the conduct of the enterprise's affairs, including the development and approval of the purported mortgage assistance relief services complained of herein. Harper, Willcox and Hoffman are intimately familiar with and direct the enterprise's operations, including its purported mortgage assistance relief services, and knew of and approved all of the practices described in this Complaint.

## **DEFENDANTS' BUSINESS PRACTICES**

### **DEFENDANTS RELY ON A DECEPTIVE SALES SCHEME**

39.    To induce consumers to purchase its services, the HLG Enterprise uses various marketing methods, including but not limited to websites, mailers, television advertisements, and outbound telemarketing calls.

40.    Through these advertisements, Defendants claim that they will include consumers in mass-joinder lawsuits and represent to consumers that this will help them get mortgage modifications and relief from foreclosure. The HLG Enterprise targets consumers throughout the United States who are in financial distress, behind on their mortgage loans, or in danger of losing their homes to foreclosure.

41.    Defendants' advertisements suggest that they can help consumers get a reduction or forgiveness of their mortgage loan, reduce interest rates, and stop foreclosure.

42.    Defendants have falsely claimed or implied that they have multiple attorneys on staff with significant experience litigating complex civil cases and that the

mass-joinder cases have a high likelihood of resulting in the consumer receiving a loan modification with favorable terms.

43.    Consumers who respond to the HLG Enterprise's marketing efforts have home mortgage loans, and typically are having difficulty making their monthly payments.

44.    Consumers who call the toll-free numbers listed on the advertisements speak with Defendants' telephone sales representatives. Defendants also employ an outbound telemarketing operation in order to get consumers on the phone with one of their sales representatives.

45.    Defendants tell consumers that the HLG Enterprise can help consumers obtain loan modifications that substantially lower consumers' monthly mortgage payments or interest rates by including the consumers in mass-joinder lawsuits in exchange for an advance fee.

46.    The HLG Enterprise charges consumers a varying upfront fee, but their typical fee is a $6,000 initial fee, which may be broken into 4-6 monthly payments. The enterprise typically charges consumers $495 per month after they pay the $6,000 initial fee.

47.    The HLG Enterprise also tells consumers that HLG works on a contingency basis. They claim that they will charge 30% of any recovery from a lawsuit and that any upfront fees that a consumer has paid will be credited to that 30%.

48.    In numerous instances, Defendants have discouraged consumers from communicating directly with their lenders or servicers and claimed that they will handle all communications with consumers' lenders and servicers.

49.     In numerous instances, the HLG Enterprise has encouraged consumers to stop making mortgage payments, and in some instances told consumers that delinquency will demonstrate the consumers' hardship to the consumers' lenders. In those instances, Defendants do not disclose that if consumers stop making mortgage payments, they could lose their homes and damage their credit ratings.

50.     Many of Defendants' solicitations fail to make disclosures required by law, including that:

- The consumer may stop doing business with Defendants or reject an offer of mortgage assistance, if one is made, without having to pay for the services;

- Defendants' companies are not associated with the government or approved by the government or the consumer's lender; and

- Even if the consumer uses the HLG Enterprise's service, the consumer's lender may not agree to modify the loan.

51.     Where Defendants' solicitations make any of these disclosures, Defendants fail to make the disclosures in a clear and prominent manner: They are not preceded by the heading "IMPORTANT NOTICE" and they are made in a font size that is smaller than 12 point type.

**THE HLG ENTERPRISE DOES NOT OBTAIN THE PROMISED MODIFICATION AND CAUSES CONSUMER INJURY**

52.     After consumers pay Defendant's upfront fees, Defendants in most, if not all, instances fail to obtain a loan modification, substantially reduce consumers' mortgage payments, or stop foreclosure.

53.     One of Defendants' major selling points to consumers has been to tout that lenders will be more willing to negotiate with HLG because they are filing litigation with a voluminous number of plaintiffs. In some instances, Defendants do file the promised mass-joinder litigation on behalf of some clients. But, beginning in March 2013, courts began dismissing claims and severing all but the first-named plaintiffs from these actions. Nevertheless, even after March 2013, Defendants continued to rely on the mass-joinder theory to solicit new clients, knowing that this tactic has been continually rejected by the courts.

54.     After consumers pay their upfront fees and become clients, the HLG Enterprise often fails to answer or return their telephone calls and emails and fails to provide updates to the clients.

55.     When the clients are able to reach the HLG Enterprise, they are told that Defendants are making progress and that the clients should continue paying upfront fees.

56.     In many instances, the litigation is dismissed or the client is dropped from the action.  In those instances, Defendants have failed to provide accurate information to their clients and spin the dismissals as a positive development, in order to induce the consumer to continue pay the monthly maintenance fees for participation in the litigation.

57.     Because they believe that the HLG Enterprise is working on their cases, many consumers postpone or forego seeking other relief that may be available to them, such as working directly with their lender, using a HUD-certified non-profit housing counselor, or entering foreclosure mediation.

58.     Consumers who pay the HLG Enterprise's upfront fees suffer significant economic injury.

## THE HLG ENTERPRISE CONTINUES TO VIOLATE THE LAW EVEN AFTER ACTION BY LAW ENFORCEMENT

59.     Defendant Harper set up the HLG Enterprise despite having entered an Assurance of Voluntary Compliance ("AVC") with the State of Florida (attached as Exhibit 1), individually and as manager of Nation's Choice Financial Solutions, LLC, in 2009 for violation of FDUTPA and Section 501.1377, Florida Statutes, which relates to foreclosure-related rescue services. In the AVC, Harper assures that, among other things, he will not "engage, involve, or compensate Florida attorneys or out of state attorneys, to provide legal services to Florida homeowners for mortgage foreclosure defense and/or foreclosure related services in violation of The Florida Bar rules" or Section 877.02, Florida Statutes.

60.     The HLG Enterprise has continued to operate even after receiving Cease and Desist Orders from state regulators in Idaho and New Mexico (attached as Exhibits 2 and 3).

61.     The Idaho Order directs the Hoffman Law Group (then going by the name "the Residential Litigation Group") to immediately cease and desist from "engaging in advertising that is misleading, confusing, and deceptive."

62.     The New Mexico Order directs Hoffman and the Residential Litigation Group to immediately cease and desist from, among other things, violating Regulation O or offering mortgage relief services as defined therein.

## ROLE OF CORPORATE DEFENDANTS
## AS A COMMON ENTERPRISE

63.    Individual defendants Harper, Willcox, and Hoffman, operate their scheme by using the corporate defendants as a common enterprise.

64.    Indeed, each of the corporations exists to participate in the same mortgage assistance relief operation:

- The Hoffman Law Group files the mass joinder lawsuits and gives consumers the impression of a legitimate law firm;

- Nationwide Management Solutions runs the human resources side of the enterprise and helps to funnel revenue to non-attorneys, including Harper and Willcox;

- Legal Intake Solutions and File Intake Solutions are the telemarketing boiler rooms that convince consumers to pay HLG's fees, with substantial amounts of the money raised by those fees used to fund the telemarketing operation; and

- BM Marketing Group funnels the final profits to Harper and Willcox by first passing consumer fees through HLG's various accounts, then through Nationwide Management Solutions' various accounts, and then to BM Marketing Group.

65.    The companies in the enterprise comingle finances. For instance, Nationwide Management Solutions has paid the rent for other companies in the enterprise.

14

66.     The companies in the enterprise share a common address, operating out of a series of suites within the same building, and employees come and go between the suites multiple times per day.

67.     The companies also have shared employees. For instance, at least nine employees have received paychecks from multiple businesses in the enterprise.

68.     The corporate Defendants operate under the common control of Harper, Willcox, and Hoffman. These three individual defendants control the activities of each of the companies in the enterprise.

69.     The companies in the enterprise all exist for the single purpose of selling consumers mortgage assistance relief services and splitting the profits among the individual defendants; none of the companies has any other apparent business purpose.

**REGULATION O**

70.     In 2010, the Federal Trade Commission promulgated the MARS Rule to prohibit unfair and deceptive acts and practices with respect to mortgage loan or foreclosure relief services. 16 C.F.R. Part 322. In the CFPA, Congress transferred rulemaking authority over the MARS Rule to the Bureau, which recodified the Rule as 12 C.F.R. Part 1015, and designated it "Regulation O." The Bureau has authority to enforce Regulation O, as well as the prior MARS Rule, pursuant to 12 U.S.C. §§ 5538(a), 5564. (References below to "Regulation O" encompass both Regulation O and the MARS Rule.) The State of Florida has authority to enforce Regulation O under 12 U.S.C. § 5538(b) and 12 C.F.R. § 1015.10 (2012).

71.     Regulation O defines "mortgage assistance relief service" as "any service, plan, or program, offered or provided to the consumer in exchange for consideration, that is represented, expressly or by implication, to assist or attempt to assist the

15

consumer with . . . [n]egotiating, obtaining, or arranging a modification of any term of a dwelling loan, including a reduction in the amount of interest, principal balance, monthly payments, or fees." 12 C.F.R. § 1015.2 (2012).

72.     Regulation O defines "mortgage assistance relief service provider" as "any person that provides, offers to provide, or arranges for others to provide, any mortgage assistance relief service," other than the dwelling loan holder, the servicer of a dwelling loan, or any agent or contractor of the lender or servicer. 12 C.F.R. § 1015.2 (2012).

73.     Defendants are "mortgage assistance relief service provider[s]" engaged in the provision of "mortgage assistance relief services" as those terms are defined in Regulation O. 12 C.F.R. § 1015.2 (2012).

74.     Regulation O prohibits any mortgage assistance relief service provider from requesting or receiving payment of any fee or other consideration until the consumer has executed a written agreement between the consumer and the consumer's loan holder or servicer that incorporates the offer that the provider obtained from the loan holder or servicer. 12 C.F.R. § 1015.5(a) (2012).

75.     Regulation O further prohibits any mortgage assistance relief service provider from representing, expressly or by implication, in connection with the offering or performance of such a service, that a consumer cannot or should not contact or communicate with his or her lender or servicer. 12 C.F.R. § 1015.3(a) (2012).

76.     Regulation O further prohibits any mortgage assistance relief service provider from misrepresenting, expressly or by implication, the consumer's obligation to make scheduled periodic payments or any other payments pursuant to the terms of the consumer's dwelling loan. 12 C.F.R. § 1015.3(b)(4) (2012).

77.     Regulation O requires any mortgage assistance relief service provider, in every *general* commercial communication, as defined by 12 C.F.R. § 1015.2, to disclose that: (1) the provider is not associated with the government and its service is not approved by the government or the consumer's lender; and (2) in cases where the provider has represented, expressly or by implication, that consumers will receive certain services or results, a statement disclosing that the consumer's lender may not agree to modify a loan, even if the consumer uses the provider's service. 12 C.F.R. § 1015.4(a)(1)-(2) (2012). Regulation O requires these disclosures to be placed in a "clear and prominent manner," and when made in textual communications, they must "be preceded by the heading 'IMPORTANT NOTICE,' which must be in bold face font that is two point-type larger than the font size of the required disclosures." When made orally or through other audible means, "the required disclosures must be preceded by the statement 'Before using this service, consider the following information." 12 C.F.R. § 1015.4(a)(3) (2012).

78.     Regulation O further requires any mortgage assistance relief service provider, in every *consumer-specific* commercial communication, as defined by 12 C.F.R. § 1015.2, to disclose: (1) that the consumer may stop doing business with the provider or reject an offer of mortgage assistance without having to pay for the services; (2) that the provider is not associated with the government and its service is not approved by the government or the consumer's lender; and (3) in cases where the provider has represented, expressly or by implication, that consumers will receive certain services or results, that the consumer's lender may not agree to modify a loan, even if the consumer uses the provider's service. 12 C.F.R. § 1015.4(b)(1)-(3) (2012). Regulation O requires these disclosures to be placed in a "clear and prominent manner,"

17

and when made in textual communications, must "be preceded by the heading "IMPORTANT NOTICE," which must be in bold face font that is two point-type larger than the font size of the required disclosures." When made orally or through other audible means, "the required disclosures must be preceded by the statement "Before using this service, consider the following information" and, in telephone communications, must be made at the beginning of the call." 12 C.F.R. § 1015.4(b)(4) (2012).

79.     Regulation O defines "clear and prominent manner," as used in the disclosure requirements listed above, as requiring the textual disclosures to be made in, "at a minimum, the larger of 12-point type or one-half the size of the largest letter or numeral used in the name of the advertised Web site or telephone number to which consumers are referred." 12 C.F.R. § 1015.2 (2012).

80.     Regulation O requires any mortgage assistance relief service provider, in cases where the provider has represented, in connection with the offering or performance of such a service, that the consumer should temporarily or permanently discontinue payments on a dwelling loan, to clearly and prominently state in close proximity to any such representation that the consumer could lose his or her home and damage his or her credit rating if the consumer stops paying the mortgage. 12 C.F.R. § 1015.4(c) (2012).

81.     Regulation O further provides that it is a violation "for a person to provide substantial assistance or support to any mortgage assistance relief service provider when that person knows or consciously avoids knowing that the provider is engaged in any act or practice that violates" the rule. 12 C.F.R. § 1015.6 (2012).

82.     Under section 1097 of the CFPA, 12 U.S.C. § 5538, a violation of

Regulation O constitutes an unfair, deceptive, or abusive act or practice under the CFPA,

in violation of sections 1031 and 1036 of the CFPA, 12 U.S.C. §§ 5531, 5536.

## VIOLATIONS OF REGULATION O

### COUNT I
### (Advance Fees in Violation of Regulation O)
### (Asserted by all plaintiffs against all defendants)

83.     The allegations in paragraphs 1 - 82 are incorporated here by reference.

84.     In the course of providing, offering to provide, or arranging for others to

provide mortgage assistance relief services, the defendants have asked for or received

payment from consumers before those consumers have executed a written agreement

with the loan holder or servicer that incorporates the offer obtained by the defendants,

in violation of Regulation O, 12 C.F.R. § 1015.5(a) (2012).

### COUNT II
### (Representations in Violation of Regulation O)
### (Asserted by all plaintiffs against all defendants)

85.     The allegations in paragraphs 1 - 82 of this complaint are incorporated

here by reference.

86.     In the course of providing, offering to provide, or arranging for others to

provide mortgage assistance relief services, the defendants have engaged in

representing, expressly or by implication, that a consumer should not contact or

communicate with his or her lender or servicer, in violation of Regulation O, 12 C.F.R.

§ 1015.3(a) (2012).

## COUNT III
### (Misrepresentations in Violation of Regulation O)
### (Asserted by all plaintiffs against all defendants)

87.     The allegations in paragraphs 1 - 82 are incorporated here by reference.

88.     In the course of providing, offering to provide, or arranging for others to provide mortgage assistance relief services, the defendants have engaged in misrepresenting, expressly or by implication, material aspects of their services, including, but not limited to, misrepresenting consumers' obligation to make scheduled periodic payments or any other payments pursuant to the terms of their dwelling loans, in violation of Regulation O, 12 C.F.R. § 1015.3(b)(4) (2012).

## COUNT IV
### (Failure to Make Certain Disclosures in Violation of Regulation O)
### (Asserted by all plaintiffs against all defendants)

89.     The allegations in paragraphs 1 - 82 are incorporated here by reference.

90.     In the course of providing, offering to provide, or arranging for others to provide mortgage assistance relief services, the defendants:

    a)  violated Regulation O, 12 C.F.R. § 1015.4(a)(1),(2), by failing to make the following disclosures in all general commercial communications in a clear and prominent manner –

        o  "[The Hoffman Law Group] is not associated with the government, and our service is not approved by the government or your lender;" and

        o  "Even if you accept this offer and use our service, your lender may not agree to change your loan;"

b) violated Regulation O, 12 C.F.R. § 1015.4(b)(1),(2),(3), by failing to make the following disclosures in all consumer-specific commercial communications in a clear and prominent manner –

- o "You may stop doing business with us at any time.  You may accept or reject the offer of mortgage assistance we obtain from your lender [or servicer].  If you reject the offer, you do not have to pay us.  If you accept the offer, you will have to pay us (insert amount or method for calculating the amount) for our services;"

- o "[The Hoffman Law Group] is not associated with the government, and our service is not approved by the government or your lender;" and

- o "Even if you accept this offer and use our service, your lender may not agree to change your loan;" and

c) violated Regulation O, 12 C.F.R. § 1015.4(c), by failing to make the following disclosure in all communications in cases where Defendants have represented, expressly or by implication, in connection with the advertising, marketing, promotion, offering for sale, sale, or performance of any mortgage assistance relief service, that the consumer should temporarily or permanently discontinue payments, in whole or in part, on a dwelling loan, clearly and prominently, and in close proximity to any such representation: "If you stop paying your mortgage, you could lose your home and damage your credit rating."

## VIOLATIONS OF FLORIDA STATE LAW

### <u>COUNT V</u>
### (Deceptive and Unfair Trade Practices)
### (Asserted by Florida against all Defendants)

91.     The allegations in paragraphs 1 - 82 are incorporated here by reference.

92.     Section 501.204(1) of the Florida Unfair and Deceptive Trade Practices Act, Chapter 501, Part II, Florida Statutes, states that "unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade of commerce are hereby declared unlawful."

93.     A person that willfully engages in a deceptive or unfair act or practice is liable for a civil penalty of $10,000 for each such violation; willful violations occur when the person knew or should have known that the conduct in question was deceptive or unfair or prohibited by rule, Section 501.2075, Florida Statutes.

94.     Section 501.203(8), Florida Statutes, defines "trade or commerce" as:

> ...the advertising, soliciting, providing, offering, or distributing, whether by sale, rental, or otherwise, of any good or service, or any property, whether tangible or intangible, or any other article, commodity, or thing of value, wherever situated. "Trade or commerce" shall include the conduct of any trade or commerce, however denominated, including any nonprofit or not-for-profit person or activity.

95.     At all times material hereto, Defendants have engaged in "trade or commerce" as defined by Section 501.203(8), Florida Statutes.

96.     At all times material hereto, Defendants have engaged in deceptive, unfair, and unconscionable acts that included but are not limited to designing, creating, and sending out to consumers direct mail pieces, and maintaining websites that contained misleading information that have given consumers the impression that Defendants'

proposed mass-joinder litigation would be able to help homeowners who are having difficulty making their monthly payment to negotiate their mortgage terms and/or to stop and resolve residential foreclosure proceedings.

97.     Defendants Harper, Willcox, and Hoffman have directed or controlled, or have had the authority to direct and control, the practices engaged in by the HLG Enterprise. The false and misleading peddling of inclusion in mass-joinder lawsuits by Defendants concerns the "providing . . . of any . . . service," which is specifically defined as trade or commerce by Section 501.203, Florida Statutes.

98.     Defendants have willfully engaged in the acts and practices when they have known or should have known that such acts and practices are unfair or deceptive or otherwise prohibited by law.

99.     These above-described acts and practices of Defendants have substantially injured and will likely continue to injure and prejudice the public.  Further, these substantial injuries are not outweighed by any countervailing benefits to consumers or competition, and are not injuries that the consumers themselves could have reasonably avoided.

100.    Unless Defendants are permanently enjoined from engaging further in the acts and practices complained of herein, Defendants' actions will result in irreparable injury to the public for which there is no adequate remedy at law.

## COUNT VI
### (Civil Theft)
### (Asserted by Florida against all defendants)

101.    The allegations in paragraphs 1 - 82 are incorporated here by reference.

102.   Section 812.014(1), Florida Statutes, states that a person commits theft if he or she knowingly obtains or uses the property of another with the intent to deprive another person of a right to property and appropriate the property to his or her own use or to the use of any person not entitled to the use of the property.

103.   Defendants have collected millions of dollars from consumers around the country to obtain legal and mortgage assistance relief services under the guise that the litigation has a high likelihood of resulting in a modification of mortgage terms favorable to the consumer, which Defendants knew or should have known to be untrue.

104.   Defendants have failed to inform and/or misinformed clients who have been listed as plaintiffs in mass-joinder actions about the status of their cases, the consequences of the respective court rulings (such as dismissal or being severed), and the likelihood of obtaining the desired relief (a loan modification) through the litigation in order to induce the clients to keep paying monthly fees to continue to participate in the litigation.

105.   Upon information and belief, Defendants have not removed clients as plaintiffs in filed mass-joinder litigation for failure to pay monthly fees.  Yet they indicate to currently paying clients that they will be removed from the litigation if they stop paying the monthly fee, and numerous clients have continued to pay the monthly fees based upon those representations.

106.   Defendants Harper, Willcox, and Hoffman, have directed and controlled, or had the authority to direct and control, the practices engaged in by the HLG Enterprise.

107.   Defendants have known or should have known that they cannot legally provide these services to clients of the Hoffman Law Group.

108.    The litigation services purportedly offered by Defendants through the HLG Enterprise will not provide the promised results to Hoffman Law Group clients. In fact, the litigation is being filed with the knowledge that the vast majority of the claims will be severed or dismissed. When claims are dismissed and plaintiffs are severed, the HLG Enterprise then continually re-files the same or similar litigation (or at least leads the consumer to believe they are re-filing the litigation) to induce the clients to continue paying their monthly fees so that they can remain in the mass-joinder litigation.

109.    The monies collected by Defendants are obtained with the intent to deprive the victims of the money and are appropriated for the use of Defendants and others not entitled to the funds.

110.    Section 812.035(5), Florida Statutes, authorizes Plaintiff to seek relief for violations of Section 812.041, Florida Statutes, including ordering a defendant to divest himself of any interest in any enterprise and imposing reasonable restrictions on the future activities or investments of any defendant.

111.    Defendants' actions have deprived numerous consumers of the monies paid for services that were never rendered, and all such consumers are entitled to full restitution from Defendants.

### COUNT VII
**(Violation of Assurance of Voluntary Compliance)**
**(Asserted by Florida against Defendant Harper)**

112.    The allegations in paragraphs 1 - 82 are incorporated here by reference.

113.    In Paragraph 2.8 of the AVC (attached as Exhibit 1) with the Florida Attorney General, relating to the investigation of Nations Choice Financial Solutions, LLC, Defendant Harper agreed that he would not "engage, involve, or compensate Florida attorneys or out of state attorneys, to provide legal services to Florida

25

homeowners for mortgage foreclosure defense and/or foreclosure related services in violation of The Florida Bar rules or Florida Statute 877.02."

114.    The HLG Enterprise has sold legal services to consumers around the country, including Florida, and promised mortgage assistance relief services. The HLG Enterprise has engaged in numerous violations of the Florida Bar Rules, and has compensated Hoffman, as well as other out of state attorneys to provide legal services for mortgage foreclosure defense and/or foreclosure related services.

115.    Defendant Harper failed to comply with the terms of the AVC, which is prima facie evidence of a FDUTPA violation, pursuant to Section 501.207(6) Florida Statutes and Section IV of the AVC.

116.    By violating the terms of the AVC, Defendant Harper engaged in unfair and deceptive acts and practices in the conduct of trade or commerce in violation of Section 501.204(1), Florida Statutes.

117.    Defendant's actions have resulted in damage to consumers.

118.    Plaintiff Florida is entitled to permanent injunctive relief without the necessity of showing that there is an irreparable injury to the public for which there is no adequate remedy at law.

**COUNT VIII**
**(Deceptive and Unfair Trade Practices Through**
**Violation of the Florida Telemarketing Act)**
**(Asserted by Florida against Defendants Harper,**
**Willcox, and File Intake Solutions, LLC)**

119.    The allegations in paragraphs 1 - 82 are incorporated here by reference.

120.    On or about March 14, 2013, Defendants Harper and Willcox filed an application with the Florida Department of Agriculture and Consumer Services for

licensure as a commercial telephone seller on behalf of Defendant File Intake Solutions, LLC.

121.    Defendants Harper and Willcox failed to truthfully answer all questions on the commercial telephone seller license filed on behalf of Defendant File Intake Solutions, LLC, including:

- Under the section titled *Occupation History*, Defendants Harper and Willcox omitted their previous history working on behalf of the HLG Enterprise prior to the incorporation of File Intake Solutions, LLC.

- Under the section of the application titled *Previous Experience*, Defendants Harper and Willcox claim to have "0 months experience," when, in fact, both had significant experience in the foreclosure rescue industry.

- Under the section *Parents and Affiliates*, Defendants Harper and Willcox omitted the other entities affiliated with the HLG Enterprise.

- Under the section titled *Officer 2*, and in apparent reference to Harper, Defendants Harper and Willcox answered "no" to question 3, which asks, "Have you ever been subject to any litigation ...an assurance of voluntary compliance...as the result of any action brought by a government agency?" In fact, Harper was party to an Assurance of Voluntary Compliance agreed to with the Attorney General as alleged in paragraphs 59 and 113 of this Complaint.

- Under the section titled *Salespersons*, Defendants Harper and Willcox answered, "No salespersons listed." In fact, the HLG Enterprise has

employed numerous telemarketers who have sold consumer goods or services.

- Under the section titled *Question 12*, Defendants Harper and Willcox answered, "We do not send any written material to any prospective or actual purchaser." In fact, the HLG Enterprise sends out numerous advertisements and documents pertaining to the prospective client's participation in the mass-joinder lawsuits peddled by the HLG Enterprise.

122. Furthermore, Defendants conducted telemarketing activities on behalf of the HLG Enterprise for approximately two years prior to applying for the commercial telephone seller license.

123. Section 501.203(3)(c), Florida Statutes, states that a violation of Chapter 501, Part II, may be based on a violation of "[a]ny law, statute, rule, regulation, or ordinance which proscribes unfair methods of competition, or unfair, deceptive, or unconscionable acts or practices."

124. Falsifying information on a commercial telephone seller application, in violation of Sections 501.616(4) and 501.623(4), Florida Statutes, offends established public policy and is substantially injurious to consumers, as well as competitors, and is therefore an unfair practice in violation of Section 501.204, Florida Statutes.

125. Engaging in unlicensed commercial telephone sales, in violation of Sections 501.616(4) and 501.623(3), Florida Statutes, offends established public policy and is substantially injurious to consumers, as well as competitors, and is therefore an unfair practice in violation of Section 501.204, Florida Statutes.

126.    These above-described acts and practices of Defendants Harper, Willcox, and File Intake Solutions, LLC, have substantially injured and will likely continue to substantially injure and prejudice the public.  Further, these substantial injuries are not outweighed by any countervailing benefits to consumers or competition, and are not injuries that the consumers themselves could have reasonably avoided.

127.    Unless the Defendants are permanently enjoined from engaging further in the acts and practices complained of herein, the Defendants' actions will result in irreparable injury to the public for which there is no adequate remedy at law.

### PRAYER FOR RELIEF

128.    Wherefore, Plaintiffs request that the Court:

     a.  permanently enjoin Defendants from committing future violations of Regulation O, the FDUTPA, the Florida Telemarketing Act, and acts of Civil Theft, and enter such other injunctive relief as appropriate;

     b.  award restitution, jointly and severally, against Defendants in the amount of all unlawfully collected fees;

     c.  order disgorgement of ill-gotten revenues against Defendants;

     d.  award civil money penalties against Defendants;

     e.  order the rescission or reformation of contracts where necessary to redress injury to consumers;

     f.  award costs against Defendants; and

     g.  award additional relief as the Court may determine to be just and proper.

Dated: July 14, 2014

Respectfully Submitted,

Attorneys for Plaintiff
Consumer Financial Protection Bureau:

Anthony Alexis, DC Bar #384545
Acting Enforcement Director

Ori Lev, DC Bar #452565
Deputy Enforcement Director

Laurel Loomis Rimon, CA Bar #166148
Assistant Deputy Enforcement Director

Zach Mason, WA Bar #47202
S.D. Fla. Special Bar #A5501978
(Email: zach.mason@cfpb.gov)
(Phone: 202-435-7508)
Nelle Rohlich, WI Bar #1047522
S.D. Fla. Special Bar #A5501979
(Email: nelle.rohlich@cfpb.gov)
(Phone: 202-435-7280)
1700 G Street NW
Washington, DC 20552
Fax: 202-435-7722

And

Attorneys for Plaintiff
The State of Florida,
Office of the Attorney General
Department of Legal Affairs:

Pamela Jo Bondi
Attorney General

Victoria A. Butler
Attorney Supervisor/Bureau Chief

Richard Schiffer, FL Bar #74418
richard.schiffer@myfloridalegal.com

Amanda Arnold Sansone, FL Bar # 587311
amanda.sansone@myfloridalegal.com
3507 East Frontage Road #325
Tampa, Florida 33607
Phone: 813-287-7950
Fax: 813-281-5515