## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA

### CASE NO. 14-80931-CIV-COHN-SELTZER

CONSUMER FINANCIAL PROTECTION
BUREAU and THE STATE OF FLORIDA,
Office of the Attorney General,
Department of Legal Affairs

      Plaintiffs,

v.

MICHAEL HARPER, an individual; BENN
WILLCOX, an individual; MARC HOFFMAN,
an individual; THE HOFFMAN LAW GROUP,
P.A. f/k/a THE RESIDENTIAL LITIGATION
GROUP, P.A., a Florida corporation;
NATIONWIDE MANAGEMENT SOLUTIONS,
LLC, a Florida limited liability company;
LEGAL INTAKE SOLUTIONS, LLC, a Florida
limited liability company; FILE INTAKE
SOLUTIONS, LLC, a Florida limited liability
company; and BM MARKETING GROUP,
LLC, a Florida limited liability company,

      Defendants.

### STIPULATED FINAL JUDGMENT AND ORDER
### AS TO DEFENDANT MARC HOFFMAN

Plaintiffs, the Consumer Financial Protection Bureau ("CFPB" or "Bureau") and

the State of Florida ("Florida"), commenced this civil action on July 14, 2014, pursuant

to: (1) Sections 1054 and 1055 of the Consumer Financial Protection Act of 2010

("CFPA"), 12 U.S.C. §§ 5564, 5565; (2) Section 626 of the Omnibus Appropriations Act

of 2009, as amended by Section 1097 of the CFPA, 12 U.S.C. § 5538, and the Mortgage

Assistance Relief Services Rule, 12 C.F.R. Part 1015 ("Regulation O"); (3) the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), Chapter 501, Part II, Florida Statutes; and (4) Florida's Civil Theft Law, Sections 812.035(5), 812.014, Florida Statutes. On that date, Plaintiffs filed a Complaint for Permanent Injunction and Other Relief ("Complaint"), seeking preliminary and permanent injunctive relief, rescission or reformation of contracts, the refund of monies paid, restitution, disgorgement of ill-gotten monies, civil money penalties, and other equitable relief for Defendants' acts or practices related to the marketing and sale of mortgage assistance relief services in violation of Regulation O, FDUTPA, and Florida's Civil Theft Law. Compl., DE 4.

On July 16, 2014, the Court issued an *ex parte* Temporary Restraining Order against Defendants, which froze Defendants' assets and placed The Hoffman Law Group and the other Corporate Defendants (defined below) into receivership. DE 13.

The Corporate Defendants failed to file an answer or otherwise defend in this action, and the Clerk entered default against them on September 12, 2014. DE 71, 72.

The Court approved stipulated preliminary injunctions for Defendant Marc Hoffman on September 15, 2014, and for Defendants Benn Willcox and Michael Harper on September 23, 2014. DE 76, 89, 90. On March 2, 2015, the Court entered preliminary injunctions against each of the Corporate Defendants. DE 131.

Plaintiffs and Defendant Marc Hoffman, by and through their respective counsel, have agreed to the entry of this Stipulated Final Judgment and Order as to Defendant Marc Hoffman ("Order") by this Court.

It is therefore ORDERED, ADJUDGED, AND DECREED as follows:

2

## I. Findings

1.    This Court has jurisdiction over the subject matter of this case and over
Defendant Marc Hoffman pursuant to 12 U.S.C. § 5565(a)(1) and 28 U.S.C. §§ 1331,
1345, and 1367.

2.    Venue in the Southern District of Florida is proper under 28 U.S.C. § 1391(b) and
12 U.S.C. § 5564(f).

3.    Plaintiffs and Mr. Hoffman agree to entry of this Order, without adjudication of
any issue of fact or law, to settle and resolve all matters in dispute arising from the
conduct alleged in the Complaint.

4.    The Complaint states claims upon which relief may be granted under Regulation
O, 12 C.F.R. Part 1015; FDUTPA, Chapter 501, Part II, Florida Statutes; and Florida's
Civil Theft Law, Sections 812.035(5), 812.014, Florida Statutes.  The relief provided in
this Order is appropriate and available pursuant to Sections 1054 and 1055 of the CFPA,
12 U.S.C. §§ 5564, 5565, and Sections 503.207 *et seq.* and Section 812.035(5), Florida
Statutes.

5.    For the purposes of this Order, Mr. Hoffman admits the facts necessary to
establish the Court's jurisdiction over him and the subject matter of this action, but does
not admit the allegations in the Complaint or waive any privilege, including his privilege
against self-incrimination.

6.    Mr. Hoffman waives all rights to seek judicial review or otherwise challenge or
contest the validity of this Order. Mr. Hoffman also waives any claim he may have under
the Equal Access to Justice Act, 28 U.S.C. § 2412, concerning the prosecution of this
action. Each party will bear its own costs and expenses, including, without limitation,
attorneys' fees, except as otherwise provided in Section XVI of this Order.

3

7. Entry of this Order is in the public interest.

## II. Definitions

8. The following definitions apply to this Order:

   a. "Affected Consumer" means any consumer to whom Defendants or their officers, agents, servants, employees, or attorneys sold or provided Mortgage Assistance Relief Products or Services between April 1, 2012 and the Effective Date.

   b. "Asset" means any legal or equitable interest in, right to, or claim to any real, personal, or intellectual property owned or controlled by, or held, in whole or in part, for the benefit of, or subject to access by any Defendant, wherever located, whether in the United States or abroad. This includes, but is not limited to, chattel, goods, instruments, equipment, fixtures, general intangibles, effects, leaseholds, contracts, mail or other deliveries, shares of stock, commodities, futures, inventory, checks, notes, accounts, credits, receivables (as those terms are defined in the Uniform Commercial Code), funds, cash, and trusts, including, but not limited to, any trust held for the benefit of any Individual Defendant, any of Individual Defendants' minor children, or any of Individual Defendants' spouses.

   c. "Assisting others" includes, but is not limited to:

      i. Consulting in any form whatsoever;

      ii. Performing customer service functions including, but not limited to, receiving or responding to consumer complaints;

      iii. Formulating or providing, or arranging for the formulation or provision of, any advertising or marketing material, including, but not

4

> limited to, any telephone sales script, direct mail solicitation, or the
> text of any Internet website, email, or other electronic communication;

    iv.    Formulating or providing, or arranging for the formulation or provision of, any marketing support material or service, including, but not limited to, web or Internet Protocol addresses or domain name registration for any Internet websites, affiliate marketing services, or media placement services;

    v.    Providing names of, or assisting the generation of, potential customers;

    vi.    Performing marketing, billing, or payment services of any kind; or

    vii.    Acting or serving as an employee, independent contractor, owner, officer, director, manager, or principal.

d.  "Commercial Telephone Solicitation" means:

    i.    An unsolicited telephone call to a person for the purpose of inducing the person to purchase or invest in consumer goods or services;

    ii.    Communication with a person where (1) a gift, award, or prize is offered or (2) a telephone call response is invited, and (3) the salesperson intends to complete a sale or enter into an agreement to purchase consumer goods or services during the course of the telephone call; or

    iii.    Any other communication with a person that represents a price, quality, or availability of consumer goods or services and invites a response by telephone or which is followed by a call to the person by a salesperson.

e.  "Consumer Financial Product or Service" is synonymous in meaning and equal in scope to the definition of the term in Section 1002(5) of the CFPA, 12 U.S.C. § 5481(5), and, subject to applicable restrictions contained in the CFPA, includes, but is not limited to:

  i.  Extending credit and servicing loans, including acquiring, purchasing, selling, brokering, or other extensions of credit (other than solely extending commercial credit to a person who originates consumer credit transactions);

  ii.  Providing real estate settlement services or performing appraisals of real estate or personal property;

  iii.  Providing financial advisory services (other than services relating to securities provided by a person regulated by the Securities and Exchange Commission or a person regulated by a state securities commission, but only to the extent that such person acts in a regulated capacity) to consumers on individual financial matters or relating to proprietary financial products or services (other than by publishing any bona fide newspaper, news magazine, or business or financial publication of general and regular circulation, including publishing market data, news, or data analytics or investment information or recommendations that are not tailored to the individual needs of a particular consumer), including—

    (I) providing credit counseling to any consumer; and

6

        (II) providing services to assist a consumer with debt management or debt settlement, modifying the terms of any extension of credit, or avoiding foreclosure;

    iv.    Collecting, analyzing, maintaining, or providing consumer report information or other account information, including information relating to the credit history of consumers, used or expected to be used in connection with any decision regarding the offering or provision of a Consumer Financial Product or Service; or

    v.    Collecting debt related to any Consumer Financial Product or Service.

f.    "Corporate Defendants" means The Hoffman Law Group, P.A. (f/k/a The Residential Litigation Group, P.A.); Nationwide Management Solutions, LLC; Legal Intake Solutions, LLC; File Intake Solutions, LLC; and BM Marketing Group, LLC; and their successors and assigns.

g.    "Credit Repair Product or Service" means any service, in return for the payment of money or other valuable consideration, for the express or implied purpose of improving any consumer's credit record, credit history, or credit rating.

h.    "Debt Relief Product or Service" means any product, service, plan, or program represented, expressly or by implication, to renegotiate, settle, or in any way alter the terms of payment or other terms of the debt or obligation, including, but not limited to, a tax debt or obligation, between a person and one or more creditors or debt collectors, including, but not limited to, a reduction in the balance, interest rate, or fees owed by a person to a creditor or debt collector.

i. "Defendants" means Individual Defendants and Corporate Defendants, individually, collectively, or in any combination, and each of them by whatever names each might be known, and their successors and assigns.

j. "Effective Date" means the date on which this Stipulated Final Judgment and Order as to Defendant Marc Hoffman is signed by the Court.

k. "Enforcement Director" means the Assistant Director of the Office of Enforcement for the Consumer Financial Protection Bureau, or his or her delegee.

l. "Individual Defendants" means Michael Harper, Benn Willcox, and Marc Hoffman, individually, collectively, or in any combination, and each of them by any other names by which they might be known, and their successors and assigns.

m. "Material Fact" means any fact that is likely to affect a person's choice of, or conduct regarding, goods or services.

n. "Mortgage Assistance Relief Product or Service" means any product, service, plan, or program, offered or provided to the consumer in exchange for consideration, that is represented, expressly or by implication, to assist or attempt to assist the consumer with any of the following:

    i. Stopping, preventing, or postponing any mortgage or deed of trust foreclosure sale of the consumer's dwelling, any repossession of the consumer's dwelling, or otherwise saving the consumer's dwelling from foreclosure or repossession;

    ii.    Negotiating, obtaining, or arranging a modification of any term of a dwelling loan, including a reduction in the amount of interest, principal balance, monthly payments, or fees;

    iii.    Obtaining any forbearance or modification in the timing of payments from any dwelling loan holder or servicer on any dwelling loan;

    iv.    Negotiating, obtaining, or arranging any extension of the period of time within which the consumer may: (i) cure his or her default on a dwelling loan, (ii) reinstate his or her dwelling loan, (iii) redeem a dwelling, or (iv) exercise any right to reinstate a dwelling loan or redeem a dwelling;

    v.    Obtaining any waiver of an acceleration clause or balloon payment contained in any promissory note or contract secured by any dwelling; or

    vi.    Negotiating, obtaining, or arranging: (i) a short sale of a dwelling, (ii) a deed-in-lieu of foreclosure, or (iii) any other disposition of a dwelling other than a sale to a third party who is not the dwelling loan holder.

The foregoing includes any manner of claimed assistance to consumers with respect to mortgages, including, but not limited to, auditing or examining a consumer's mortgage or home loan application.

o.  "Person" means an individual, partnership, company, corporation, association (incorporated or unincorporated), trust, estate, cooperative organization, or other entity.

p.  "Receiver" means Mark Bernet, Esq., or any person subsequently appointed by this Court as a Receiver in this action.

9

q. "Related Consumer Action" means a private action by or on behalf of one or more consumers or an enforcement action by another governmental agency brought against Defendants based on substantially the same facts as described in the Complaint.

r. "Telemarketing" means any plan, program, or campaign that is conducted to induce the purchase of goods or services or a charitable contribution by use of one or more telephones, whether or not covered by the Telemarketing Sales Rule, 16 C.F.R. Part 310.

s. The words "and" and "or" will be understood to have both conjunctive and disjunctive meanings as necessary to make the applicable phrase or sentence inclusive rather than exclusive.

## ORDER

### III. Restrictions on Offering Consumer Financial Products or Services

**IT IS ORDERED** that:

9.    Mr. Hoffman, whether acting directly or indirectly, is permanently restrained from:

a. Advertising, marketing, promoting, offering for sale, or selling any Mortgage Assistance Relief Product or Service, Credit Repair Product or Service, or Debt Relief Product or Service; and

b. Assisting others engaged in advertising, marketing, promoting, offering for sale, or selling any Mortgage Assistance Relief Product or Service, Credit Repair Product or Service, or Debt Relief Product or Service.

10.    In addition to the restrictions stated in Paragraph 9, Mr. Hoffman, whether acting directly or indirectly, is permanently restrained from offering or providing any

10

other Consumer Financial Product or Service unless he holds a valid, state-issued license permitting him to do so.

11.     Nothing in this Section prohibits Mr. Hoffman, if he is licensed or registered as a real estate broker or real estate agent, in accordance with state law, from: (1) acting as a real estate agent or broker for a buyer, seller, lessor, or lessee of real property; (2) bringing together parties interested in the sale, purchase, lease, rental, or exchange of real property; (3) negotiating, on behalf of any party, any portion of a contract relating to the sale, purchase, lease, rental, or exchange of real property (other than in connection with the provision of financing with respect to any such transaction); or (4) offering to engage in any activity, or act in any capacity, described in subparagraphs (1), (2), or (3) above.

12.     Mr. Hoffman is permitted to be employed by a company in a capacity that involves collection of debts owed to that company, but is not permitted to act as, or on behalf of, a "debt collector," as defined by 15 U.S.C. § 1692a or Section 559.55, Florida Statutes.

## IV. Restrictions on Telemarketing

### IT IS FURTHER ORDERED that:

13.     Mr. Hoffman, whether acting directly or indirectly, is permanently restrained from engaging in, participating in, or assisting others in Telemarketing or in any other Commercial Telephone Solicitation unless he obtains a Commercial Telephone Salesperson license from the state of Florida, and only if said activities are in compliance with the Florida Telemarketing Act, Chapter 501, Part IV, Florida Statutes, and the terms of this Order.

11

14.     While he is permitted to work as a licensed Commercial Telephone Salesperson,

Mr. Hoffman will not seek licensure, nor will he act as, a Commercial Telephone Seller,

as defined by Section 501.603(2), Florida Statutes.

## V.     Restrictions on Professional Licensure

**IT IS FURTHER ORDERED** that:

15.     Mr. Hoffman will notify Plaintiffs when the Florida Supreme Court has taken

final action on his petition for disciplinary revocation of his license to practice law

within the state of Florida, pursuant to Florida Bar Rule 3-5.1(g).

16.     Mr. Hoffman will not falsify or intentionally omit any information in any

application for a professional license from any federal, state, or local regulatory agency.

17.     Mr. Hoffman will notify Plaintiffs prior to applying for a license to practice law or

any other professional license to engage in a profession that reasonably relates to the

activities prohibited by this Order. As of the Effective Date, Mr. Hoffman does not hold

any professional licenses in Florida other than his license to practice law.

## VI.     Prohibited Practices Relating to Offering Any Goods or Services

**IT IS FURTHER ORDERED** that:

18.     Mr. Hoffman, whether acting directly or indirectly, is permanently restrained

from:

    a. Misrepresenting or assisting others in misrepresenting, directly or indirectly,

        expressly or by implication, any material fact including, but not limited to:

        i.     The total costs to purchase, receive, or use any good or service;

        ii.    Any material restriction, limitation, or condition to purchase, receive,

           or use any good or service;

       iii.    Any material aspect of the nature or terms of a refund, cancellation, exchange, or repurchase policy for any good or service;

       iv.    The income, profits, or sales likely to be achieved from any good or service; and

       v.    Any material aspect of the performance, efficacy, nature, or central characteristic of any good or service.

b. Assisting others to make any material misrepresentation in connection with the advertising, marketing, promotion, offering for sale, or sale of any good or service including, but not limited to, the misrepresentation listed in subparagraph (a) immediately above; and

c. Violating, or assisting others in violating, any federal or state consumer protection laws, including, but not limited to, any provision of the FDUTPA or Regulation O.

## VII. Prohibited Use of Consumer Information

### IT IS FURTHER ORDERED that:

19.    Mr. Hoffman, whether acting directly or indirectly, may not disclose, use, or benefit from consumer information, including the name, address, telephone number, email address, social security number, other identifying information, or any data that enables access to a consumer's account (including a credit card, bank account, or other financial account), that Defendants obtained before the Effective Date in connection with Consumer Financial Products or Services, Mortgage Assistance Relief Products or Services, or Debt Relief Products or Services offered or provided by the Defendants.

20.    However, consumer information may be disclosed if requested by a government agency or required by law, regulation, or court order.

13

21.     Mr. Hoffman, whether acting directly or indirectly, may not attempt to collect, collect, sell, assign, or otherwise transfer any right to collect payment from any consumer who purchased or agreed to purchase Consumer Financial Products or Services, Mortgage Assistance Relief Products or Services, or Debt Relief Products or Services from Defendants.

## VIII. Order to Pay Redress

**IT IS FURTHER ORDERED** that:

22.     A judgment for equitable monetary relief is entered in favor of Plaintiffs and against Mr. Hoffman, in the amount of $11,730,579; however, this judgment will be automatically suspended, subject to Section IX of this Order.

23.     Mr. Hoffman will execute an agreement with the Receiver entitling the Receivership to an interest in any outstanding estates, inheritances, or unclaimed property that is being maintained by any third parties, including, but not limited to, the Florida Department of Financial Services Bureau of Unclaimed Property.

24.     Mr. Hoffman waives the right to recuperate or make any claim to any assets currently in the possession, custody, or control of the Receiver. [1]

25.     With regard to Mr. Hoffman's assets currently in the possession, custody, or control of the Receiver, if Mr. Hoffman receives, directly or indirectly, any reimbursement or indemnification from any source, including, but not limited to, payment made under any insurance policy, or if Mr. Hoffman secures a tax deduction or tax credit with regard to any federal, state, or local tax, Mr. Hoffman must: (a) immediately notify the Enforcement Director in writing, and (b) within 20 days of

---

[1] Pursuant to the Court's Temporary Restraining Order, Mr. Hoffman has surrendered to the Receiver $73,022.55 in cash.

receiving the funds or monetary benefit, transfer the full amount of such funds or monetary benefit ("Additional Payment") to the Bureau or to the Bureau's agent according to the Bureau's wiring instructions. The Additional Payment will be applied toward satisfaction of the judgment referenced in Paragraph 22. After the Bureau receives the Additional Payment, the amount of the suspended judgment referenced in Paragraph 22 will be reduced by the amount of the Additional Payment.

26.     Any funds received by the Bureau in satisfaction of this judgment will be deposited into a fund or funds administered by the Bureau or to the Bureau's agent according to applicable statutes and regulations to be used for redress for injured consumers, including, but not limited to, refund of moneys, restitution, damages, or other monetary relief, and for any attendant expenses for the administration of any such redress.

27.     If the Bureau determines, in its sole discretion, that providing redress to consumers is wholly or partially impracticable or if funds remain after the administration of redress is completed, the Bureau, after notifying Florida, may apply any remaining funds toward other equitable relief (including consumer information remedies) as determined to be reasonably related to the alleged violations described in the Complaint. Any funds not used for equitable relief will be deposited in the U.S. Treasury as disgorgement. Mr. Hoffman will have no right to challenge the choice of remedies under this Section, and will have no right to contest the manner of distribution.

28.     Payment of redress to any Affected Consumer under this Order may not be conditioned on that Affected Consumer waiving any right.

15

## IX.   Effect of Misrepresentation Regarding Financial Condition

### IT IS FURTHER ORDERED that:

29.     The suspension of the monetary judgment entered in Section VIII of this Order is expressly premised on the truthfulness, accuracy, and completeness of Mr. Hoffman's financial statement and supporting documents submitted to Plaintiffs on July 30, 2014, Mr. Hoffman's oral testimony provided on August 15, 2014, and Mr. Hoffman's bankruptcy documents filed in federal bankruptcy court, which Mr. Hoffman asserts are truthful, accurate, and complete.

30.     The suspension of the monetary judgment entered in Section VIII of this Order is further expressly premised on the truthfulness, accuracy, and completeness of Mr. Hoffman's representations regarding the assets of Corporate Defendants as of the Effective Date.

31.     If the Court determines that Mr. Hoffman has failed to disclose any material asset or that any of his financial statements contain any material misrepresentation or omission, including materially misstating the value of any asset, then the suspension of the monetary judgment entered in Section VIII will be terminated, and the Bureau can seek to enforce in any Federal district court as immediately due and payable the full judgment entered in Paragraph 22 of this Order—$11,730,579—less any amounts paid under Section VIII of this Order.

32.     After the reinstatement of the monetary judgment under this Section, Plaintiffs will be entitled to interest on the judgment, computed from the Effective Date, at the rate prescribed by 28 U.S.C. § 1961, as amended, on any outstanding amounts not paid.

## X.  Order to Pay Civil Money Penalties

### IT IS FURTHER ORDERED that:

16

33.     Under Section 1055(c) of the CFPA, 12 U.S.C. § 5565(c), by reason of the alleged violations of law described in the Complaint, and taking into account the factors in 12 U.S.C. § 5565(c)(3), Mr. Hoffman must pay a civil money penalty of $1.00 to the Bureau. This nominal penalty is based on Mr. Hoffman's limited ability to pay following the entry of this Court's Ex Parte Temporary Restraining Order with Asset Freeze, as attested to in Mr. Hoffman's financial statements.

34.     Within 10 days of the Effective Date, Mr. Hoffman must pay the civil money penalty by wire transfer to the Bureau or to the Bureau's agent in compliance with the Bureau's wiring instructions.

35.     The civil money penalty paid under this Order will be deposited in the Civil Penalty Fund of the Bureau as required by Section 1017(d) of the CFPA, 12 U.S.C. § 5497(d).

36.     Mr. Hoffman must treat the civil money penalty paid under this Order as a penalty paid to the government for all purposes.

## XI.     Additional Monetary Provisions

### IT IS FURTHER ORDERED that:

37.     In the event of any default on Mr. Hoffman's obligations to make payment under this Order, interest computed under 28 U.S.C. § 1961, as amended, will accrue on any outstanding amounts not paid from the date of default to the date of payment, and will immediately become due and payable.

38.     Mr. Hoffman must relinquish all dominion, control, and title to the funds paid to the fullest extent permitted by law and no part of the funds may be returned to Mr. Hoffman.

17

39.     Under 31 U.S.C. § 7701, Mr. Hoffman, unless he has already done so, must furnish to Plaintiffs his taxpayer identifying numbers, which may be used for purposes of collecting and reporting on any delinquent amount arising out of this Order.

40.     Within 30 days of the entry of a final judgment, consent order, or settlement in a Related Consumer Action, Mr. Hoffman must notify the Enforcement Director of the final judgment, consent order, or settlement in writing. That notification must indicate the amount of redress, if any, that any Defendant paid or is required to pay to consumers and describe the consumers or classes of consumers to whom that redress has been or will be paid.

41.     Under Section 604(a)(1) of the Fair Credit Reporting Act, 15 U.S.C. § 1681b(a)(1), in response to a request from the Bureau or the Florida Attorney General, any consumer reporting agency may furnish a consumer report to the Bureau or the Florida Attorney General concerning Mr. Hoffman, which may be used for purposes of collecting and reporting on any delinquent amount arising out of this Order.

## XII. Reporting Requirements

**IT IS FURTHER ORDERED** that:

42.     For five years from the Effective Date, Mr. Hoffman must notify the Bureau and Florida of any development that may affect compliance obligations arising under this Order, including, but not limited to, a dissolution, assignment, sale, merger, or other action relating to the Corporate Defendants that would result in the emergence of a successor company; the creation or dissolution of a subsidiary, parent, or affiliate of the Corporate Defendants that engages in any acts or practices subject to this Order; the filing of any bankruptcy or insolvency proceeding by or against Mr. Hoffman; or a change in Mr. Hoffman's name or address. Mr. Hoffman must provide this notice at

least 30 days before the development or as soon as practicable after learning about the development, whichever is sooner.

43.    Within 7 days of the Effective Date, Mr. Hoffman must:

   a.  Designate at least one telephone number and email, physical, and postal address as points of contact, which Plaintiffs may use to communicate with Mr. Hoffman;

   b.  Identify all businesses for which Mr. Hoffman is the majority owner, or that Mr. Hoffman directly or indirectly controls, by all of their names, telephone numbers, and physical, postal, email, and Internet addresses;

   c.  Describe the activities of each such business, including the products and services offered, and the means of advertising, marketing, and sales;

   d.  Identify Mr. Hoffman's telephone numbers and all email, Internet, physical, and postal addresses, including all residences;

   e.  Describe in detail Mr. Hoffman's involvement in any business for which he performs services in any capacity or which he wholly or partially owns, including Mr. Hoffman's titles, roles, responsibilities, participation, authority, control, and ownership.

44.    For five years from the Effective Date, Mr. Hoffman must report any change in the information required to be submitted under Paragraph 43 at least 30 days before the change or as soon as practicable after learning about the change, whichever is sooner.

**XIII. Order Distribution and Acknowledgment**

   **IT IS FURTHER ORDERED** that:

45.    Within 30 days of the Effective Date, Mr. Hoffman, for any business for which he is the majority owner or which he directly or indirectly controls, must deliver a copy of

this Order to each of its board members and executive officers, as well as to any

managers, employees, service providers, or other agents and representatives who have

responsibilities related to the subject matter of this Order.

46.     For five years from the Effective Date, Mr. Hoffman, for any business for which

he is the majority owner or which he directly or indirectly controls must deliver a copy

of this Order to any business entity resulting from any change in structure referred to in

Section XII, any future board members and executive officers, as well as to any

managers, employees, service providers, or other agents and representatives who will

have responsibilities related to the subject matter of this Order before they assume their

responsibilities.

47.     Mr. Hoffman must secure a signed and dated statement acknowledging receipt of

a copy of this Order, ensuring that any electronic signatures comply with the

requirements of the E-Sign Act, 15 U.S.C. §§ 7001 *et seq.*, within 30 days of delivery,

from all persons receiving a copy of this Order under this Section.

## XIV.  Recordkeeping

**IT IS FURTHER ORDERED** that:

48.     Mr. Hoffman must create, for at least five years from the Effective Date, the

following business records for any business for which Mr. Hoffman, individually or

collectively with any other Defendant, is a majority owner or which he directly or

indirectly controls:

a.  All documents and records necessary to demonstrate full compliance with
    each provision of this Order, including all submissions to the Bureau and
    Florida;

b.  Copies of all sales scripts, training materials, advertisements, websites, and

20

other marketing materials, including any such materials used by a third party on behalf of Mr. Hoffman or his business; and

c.  Documents sufficient to demonstrate the experience of consumers interacting with Mr. Hoffman, whether acting directly or through any sole proprietorship, partnership, limited liability company, corporation, subsidiary, branch, division, affiliate, or other entity, when Mr. Hoffman advertised, promoted, marketed, offered for sale, sold, or provided products or services to consumers.

49.  Mr. Hoffman must retain the documents identified in Paragraph 48 for at least five years.

50.  Mr. Hoffman must make the documents identified in Paragraph 48 available to the Bureau and Florida upon either Plaintiff's request.

**XV.  Notices**

**IT IS FURTHER ORDERED** that:

51.  Unless otherwise directed in writing by Plaintiffs, Mr. Hoffman must provide all submissions, requests, communications, or other documents relating to this Order in writing, with the subject line, "CFPB and State of Florida v. Harper, Hoffman, et al., CASE NO. 14-80931-CIV-COHN-SELTZER," and send them either:

a.  By first-class U.S. mail to the below address and contemporaneously by email to:

Assistant Director for Enforcement
Consumer Financial Protection Bureau
ATTENTION: Office of Enforcement
1700 G Street, N.W.
Washington D.C. 20552
Enforcement_Compliance@cfpb.gov; and

Florida Attorney General
c/o Director of Consumer Protection Division
3507 East Frontage Road #325
Tampa, Florida 33607
cpenforcement@myfloridalegal.com

b.  By overnight courier (not the U.S. Postal Service) and contemporaneously by

email, as follows:

Assistant Director for Enforcement
Consumer Financial Protection Bureau
ATTENTION: Office of Enforcement
1625 Eye Street, N.W.
Washington D.C. 20006
Enforcement_Compliance@cfpb.gov; and

Office of the Attorney General
c/o Director of Consumer Protection Division
3507 East Frontage Road #325
Tampa, Florida 33607
cpenforcement@myfloridalegal.com

## XVI. Resolution of State Claims

### IT IS FURTHER ORDERED that:

52.     Mr. Hoffman shall pay civil penalties to the State of Florida, General Revenue

Fund, in the amount of $20,000 for willful violation of FDUTPA for Mr. Hoffman's role

in the creation and dissemination of false and misleading statements in direct mail

pieces and on The Hoffman Law Group website;

53.     In consideration of Mr. Hoffman's compliance with the permanent injunctive

relief mandated in this Order, in the interests of providing for consumer restitution, and

based upon the information supplied by Mr. Hoffman in a sworn financial statement

submitted to Plaintiffs, the payment of this penalty is suspended. However, the parties

agree that the $20,000 penalty shall be imposed and due and owing if Mr. Hoffman

violates any of the terms of this Order, or is found to have submitted false information or intentionally omitted information in the sworn financial statement.

54.     Florida reserves the right to seek additional investigative and attorneys' fees and costs upon default or upon any future noncompliance. Time is of the essence in all payments required under this Order.

## XVII. Cooperation with Plaintiffs

### IT IS FURTHER ORDERED that:

55.     Mr. Hoffman must cooperate fully to help Plaintiffs to determine the identity and location of, and the amount of injury sustained by, each Affected Consumer. Mr. Hoffman must provide such information in his or his agents' possession or control within 14 days of receiving a written request from either Plaintiff.

56.     Mr. Hoffman must cooperate fully with Plaintiffs in this matter and in any investigation related to or associated with the conduct described in the Complaint. Mr. Hoffman must provide truthful and complete information, evidence, and testimony. Mr. Hoffman must appear for interviews, discovery, hearings, trials, and any other proceedings that Plaintiffs may reasonably request upon five days' written notice, or other reasonable notice, at such places and times as Plaintiffs may designate, without the service of compulsory process.

## XVIII. Cooperation with Receiver

### IT IS FURTHER ORDERED that:

57.     Mr. Hoffman, and his successors, assigns, officers, agents, directors, employees, salespersons, independent contractors, attorneys, and corporations, and all other persons or entities in active concert or participation with him, who receive actual notice of this Order by personal service or otherwise, whether acting directly or through any

23

trust, corporation, subsidiary, or other device, or any of them, must fully cooperate with and assist the Receiver.

## XIX.  Compliance Monitoring

**IT IS FURTHER ORDERED** that, to monitor Mr. Hoffman's compliance with this Order, including the financial representations upon which the judgment for equitable monetary relief was suspended:

58.    Within 14 days of receipt of a written request from one of the Plaintiffs, Mr. Hoffman must submit additional requested information, which must be made under penalty of perjury; provide sworn testimony; or produce documents.

59.    For purposes of this Section, Plaintiffs may communicate directly with Mr. Hoffman, unless Mr. Hoffman retains counsel related to these communications.

60.    Mr. Hoffman must permit Plaintiffs' representatives to interview any employee or other person affiliated with Defendants who has agreed to such an interview. The person interviewed may have counsel present.

61.    Nothing in this Order will limit Plaintiffs' lawful use of compulsory process under 12 C.F.R. § 1080.6 or any other applicable law.

## XX.  Retention of Jurisdiction

**IT IS FURTHER ORDERED** that this Court will retain jurisdiction of this matter for purposes of construction, modification, and enforcement of this Order.

## XXI.  Final Judgment and Order

Plaintiffs and Mr. Hoffman have consented to the terms and conditions of this Order as set forth above and have consented to the entry thereof.

IT IS SO ORDERED, _____*May 6*_____, 2015.


The Honorable James I. Cohn
United States District Judge